UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ARLINE BROWN as the Administratrix of the Estate
of KEVIN BROWN, Deceased,

                                    *Plaintiff,*

                            -against-

THE CITY OF NEWBURGH, THE CITY
OF NEWBURGH POLICE DEPARTMENT,
ERIC PAOLILLI, Individually and in his Official
Capacity as the Chief of Police and a Police Officer
employed in the City of Newburgh Police Department
by the City of Newburgh, ERIK ELTZ, Individually and
in his Official Capacity as a Police Officer employed in the
City of Newburgh Police Department by the City of
Newburgh, FRANK LABRADA, Individually and
in his Official Capacity as a Police Officer employed
in the City of Newburgh Police Department by the City
of Newburgh, DONALD CAMPBELL, Individually
and in his Official Capacity as a Police Officer employed
in the City of Newburgh Police Department by the
City of Newburgh, WILLIAM ROSE, Individually and
in his Official Capacity as a Police Officer employed
in the City of Newburgh Police Department by the
City of Newburgh, and PAUL WEBER, Individually
and in his Official Capacity as a Police Officer
employed in the City of Newburgh Police Department
by the City of Newburgh,

                                    *Defendants.*
-------------------------------------------------------------------X

**COMPLAINT**

**08 CIV**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**



**08 CIV. 5088**

**JUDGE KARAS**

The plaintiff ARLINE BROWN, as the Administratrix of the Estate of KEVIN BROWN,

Deceased (hereinafter "Kevin Brown"), by her attorneys Larkin, Axelrod, Ingrassia &

Tetenbaum, LLP, complaining of the defendants, hereby alleges as follows:

### JURISDICTION AND VENUE

1.    This is a civil rights and common law action brought pursuant to the Eighth and

Fourteenth Amendments of the United States Constitution and 42 USC § 1983 seeking redress, including compensatory and punitive damages, for the defendants' deprivation, under color of state law, of Kevin Brown's rights, privileges, and immunities secured by the United States Constitution and the laws of the United States.

2.     Accordingly, this Court has jurisdiction over this action pursuant to 28 USC § 1331 and 28 USC § 1343.

3.     The plaintiff also brings this action, in part, pursuant to the law of the State of New York. This Court has jurisdiction over the plaintiff's claims brought pursuant to the law of the State of New York pursuant to 28 USC § 1367.

4.     Each and all of the acts and omissions committed by the defendants were done by them under the color and pretense of the statutes, ordinances, regulations, contracts, customs, and uses of the defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT and under the authority of their offices as agents, servants, and/or employees of the defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT.

5.     All of the claims that the plaintiff asserts arose in the County of Orange, State of New York, within the Southern District of New York.

6.     Accordingly, venue is proper in the Southern District of New York.

**JURY DEMAND**

7.     The plaintiff ARLINE BROWN demands a trial by jury of all issues in this action.

**PARTIES**

8.     The plaintiff ARLINE BROWN is the mother and next of kin of Kevin Brown, and was duly appointed Administratrix of his Estate prior to the commencement of this action

by order of the Surrogate's Court of the County of Orange, State of New York, dated October 1, 2007.

9.    On and prior to July 28, 2007, the plaintiff ARLINE BROWN and Kevin Brown resided in Orange County, State of New York.

10.    On July 28, 2007, Kevin Brown hanged himself in his cell at the city jail of the defendant THE CITY OF NEWBURGH located at 55 Broadway, Newburgh, New York (hereinafter "Newburgh City Jail").

11.    On July 29, 2007, Kevin Brown died as a result of that suicidal act.

12.    Upon information and belief, at all times hereinafter mentioned, the defendant THE CITY OF NEWBURGH was and still is a municipal corporation organized and existing pursuant to the laws of the State of New York.

13.    Upon information and belief, at all times hereinafter mentioned, the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT was and still is a police department of the defendant THE CITY OF NEWBURGH created pursuant to Section C11.01 of the Charter of the defendant THE CITY OF NEWBURGH for the purpose of effectuating certain police powers for the defendant THE CITY OF NEWBURGH as a municipal corporation.

14.    Upon information and belief, at all times hereafter mentioned, the defendant ERIC PAOLILLI was the duly appointed Police Chief of the defendant THE  CITY OF NEWBURGH POLICE DEPARTMENT.

15.    Upon information and belief, at all times hereafter mentioned, the defendant ERIC PAOLILLI, as Police Chief, was the head and chief executive officer of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT pursuant to Section C 11.03 of the Charter of the defendant THE CITY OF NEWBURGH.

16.   Upon information and belief, at all times hereafter mentioned, the defendant ERIC PAOLILLI, as Police Chief, was responsible for the Newburgh City Jail and had custody of all persons incarcerated therein pursuant to Section C 11.04(A) of the Charter of the defendant THE CITY OF NEWBURGH.

17.   Upon information and belief, at all times hereafter mentioned, the defendant ERIC PAOLILLI, as Police Chief, was responsible for the performance by the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT of its functions, and all persons who were members of that police department served subject to his orders pursuant to Section C 11.04(B) of the Charter of the defendant THE CITY OF NEWBURGH.

18.   Upon information and belief, at all times hereinafter mentioned, the defendant ERIK ELTZ was a duly appointed police officer and member of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT and was employed by the defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT.

19.   Upon information and belief, at all times hereinafter mentioned, the defendant FRANK LABRADA was a duly appointed police officer and member of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT and was employed by the defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT.

20.   Upon information and belief, at all times hereinafter mentioned, the defendant DONALD CAMPBELL was a duly appointed police officer and member of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT and was employed by the defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT.

21.   Upon information and belief, at all times hereinafter mentioned, the defendant WILLIAM ROSE was a duly appointed police officer and member of the defendant THE CITY

OF NEWBURGH POLICE DEPARTMENT and was employed by the defendants THE CITY

OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT.

22.   Upon information and belief, at all times hereinafter mentioned, the defendant

PAUL WEBER was a duly appointed police officer and member of the defendant THE CITY OF

NEWBURGH POLICE DEPARTMENT and was employed by the defendants THE CITY OF

NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

23.   According to the New York State Local Forensic Suicide Prevention Crisis Service

Model published in 1986 by the New York State Office of Mental Health, New York State

Commission of Correction and Ulster County Mental Health Services, (1) suicide was the

leading cause of death among inmates in county jails and police lockups both nationally and in

New York State, and (2) over 80% of all suicides in the entire New York State Correctional

System occurred in local facilities.

24.   The Local Forensic Suicide Prevention Crisis Service Model contained four major

components: Policy and Procedure Guidelines, Suicide Prevention Intake Screening Guidelines, a

Training Program for jail and lockup officers in Suicide and Suicide Prevention, and a Mental

Health Resource Manual.

25.   Upon information and belief, specific training in suicide and suicide prevention has

been made available to all local police officers in New York State since 1986, if not earlier,

through a program administered by the New York State Office of Mental Health, New York State

Commission of Correction and Ulster County Department of Mental Health.

26.   In November 2003, the New York State Office of Mental Health, New York State

Commission of Correction and Ulster County Department of Mental Health published an

THE CITY OF NEWBURGH POLICE DEPARTMENT and the policies and procedures of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT as they related to the suicide death of Luke Ward and the prevention of suicides by inmates of the Newburgh City Jail.

34.  Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant ERIK ELTZ became aware that Luke Ward had committed suicide at the Newburgh City Jail on February 26, 2007 by using his clothing to hang himself from the bars of the cell in which he was being held.

35.  Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant ERIK ELTZ became aware that the New York State Commission on Correction was going to conduct an investigation into the circumstances of the death of Luke Ward, as part of its duties under New York law.

36.  Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant ERIK ELTZ became aware that, as part of said investigation, the New York State Commission on Correction was going to investigate the conduct of the officers of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT and the policies and procedures of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT as they related to the suicide death of Luke Ward and the prevention of suicides by inmates of the Newburgh City Jail.

37.  Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant FRANK LABRADA became aware that Luke Ward had committed suicide at the Newburgh City Jail on February 26, 2007 by using his clothing to hang himself from the bars of the cell in which he was being held.

38.  Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant FRANK LABRADA became aware that the New York State Commission on

Correction was going to conduct an investigation into the circumstances of the death of Luke Ward, as part of its duties under New York law.

39.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant FRANK LABRADA became aware that, as part of said investigation, the New York State Commission on Correction was going to investigate the conduct of the officers of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT and the policies and procedures of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT as they related to the suicide death of Luke Ward and the prevention of suicides by inmates of the Newburgh City Jail.

40.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant DONALD CAMPBELL became aware that Luke Ward had committed suicide at the Newburgh City Jail on February 26, 2007 by using his clothing to hang himself from the bars of the cell in which he was being held.

41.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant DONALD CAMPBELL became aware that the New York State Commission on Correction was going to conduct an investigation into the circumstances of the death of Luke Ward, as part of its duties under New York law.

42.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant DONALD CAMPBELL became aware that, as part of said investigation, the New York State Commission on Correction was going to investigate the conduct of the officers of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT and the policies and procedures of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT as they related to the suicide death of Luke Ward and the prevention of suicides by inmates of the

Newburgh City Jail.

43.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant WILLIAM ROSE became aware that Luke Ward had committed suicide at the Newburgh City Jail on February 26, 2007 by using his clothing to hang himself from the bars of the cell in which he was being held.

44.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant WILLIAM ROSE became aware that the New York State Commission on Correction was going to conduct an investigation into the circumstances of the death of Luke Ward, as part of its duties under New York law.

45.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant WILLIAM ROSE became aware that, as part of said investigation, the New York State Commission on Correction was going to investigate the conduct of the officers of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT and the policies and procedures of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT as they related to the suicide death of Luke Ward and the prevention of suicides by inmates of the Newburgh City Jail.

46.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant PAUL WEBER became aware that Luke Ward had committed suicide at the Newburgh City Jail on February 26, 2007 by using his clothing to hang himself from the bars of the cell in which he was being held.

47.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant PAUL WEBER became aware that the New York State Commission on Correction was going to conduct an investigation into the circumstances of the death of Luke Ward, as part of its duties under New York law.

48.   Upon information and belief, on February 26, 2007 or shortly thereafter, the defendant PAUL WEBER became aware that, as part of said investigation, the New York State Commission on Correction was going to investigate the conduct of the officers of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT and the policies and procedures of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT as they related to the suicide death of Luke Ward and the prevention of suicides by inmates of the Newburgh City Jail.

49.   Upon information and belief, during the course of the initial processing of Luke Ward on February 26, 2007, the Suicide Risk Assessment form was completed by an officer who was not trained in the proper utilization of the ADM 330 Suicide Risk Assessment form.

50.   Upon information and belief, the Watch Commander in the Newburgh City Jail on February 26, 2007 did not ensure appropriate supervision of Luke Ward in violation of the City of Newburgh Police Department General Order 0-020 XII and 9 NYCRR §7504.1.

51.   Upon information and belief, after Luke Ward was found hanging in his cell, no resuscitation efforts were undertaken by the police officers on duty.

52.   Upon information and belief, the police officers who became aware that Luke Ward had hanged himself in his cell had not received CPR training since they had attended the police academy.

53.   Upon information and belief, the defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT, their agents, servants and/or employees did not take any disciplinary action against, or penalize, any personnel of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT in connection with the suicide death of Luke Ward.

54.   Upon information and belief, the defendant THE CITY OF NEWBURGH did not perform an independent investigation into the death of Luke Ward.

55. Upon information and belief, the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT did not perform an internal investigation into the death of Luke Ward.

56. Upon information and belief, on June 17, 2007 while acting within the scope of his employment, the defendant ERIC ELTZ participated in an arrest of Kevin Brown for criminal possession of a controlled substance in the fifth degree, a felony under New York law.

57. Upon information and belief, following this arrest Kevin Brown was taken into custody and transported to the Newburgh City Jail by one or more officers employed by the defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT.

58. Upon information and belief, on June 18, 2007 while Kevin Brown was in the custody of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT at the Newburgh City Jail, he attempted to use his tee shirt to hang himself from the bars of the cell in which he was being held.

59. Upon information and belief, as a result of this suicide attempt, Kevin Brown sustained a noticeable bruise or abrasion on his right cheek.

60. Upon information and belief, on June 18, 2007 after making this suicide attempt, Kevin Brown was transferred to and booked into the Orange County Jail in Goshen, New York, after which he was placed on a suicide watch at the Orange County Jail.

61. Upon information and belief, at the time of Kevin Brown's admission to the Orange County Jail on June 18, 2007, a screening officer, Michael Shaffer, completed a "Suicide Prevention Screening Questionaire [sic]" concerning Kevin Brown, dated June 18, 2007, which included the following questions and affirmative answers:

Q    Detainee has previous suicide attempt. (explore method and check for scars).

A     Y[es] Hang-up in Newburgh today

Q     Detainee has attempted suicide within the last month.

A     Y[es] [T]oday in Newburgh PD

62.   Upon information and belief, at the time of Kevin Brown's admission to the Orange

County Jail on June 18, 2007, a registered nurse completed a "Urgent Medical Assessment

Form" concerning Kevin Brown, dated June 18, 2007, which included the following description

of said suicide attempt by Kevin Brown: "Per in[mate] while in jail cell 6/18/07 City of

Newburgh attempted to hang self with shirt.  In[mate] does not know how he got abrasion on

[right] side cheek."

63.   Upon information and belief, at the time of Kevin Brown's admission to the Orange

County Jail on June 18, 2007, a registered nurse completed a "Urgent Medical Assessment

Form" concerning Kevin Brown, dated June 18, 2007, which included the following nursing

diagnosis: "In[mate] states he wanted to die.  Has nothing to look forward to."

64.   Upon information and belief, at the time of Kevin Brown's admission to the Orange

County Jail on June 18, 2007, a booking staff employee completed an "Orange County

Department of Mental Health Booking Referral for Mental Health Services" concerning Kevin

Brown, dated June 18, 2007, which included the following comments: "Inmate stated he was

attempting to hangup while in City of Newburgh lock-up and fell off the bench."

65.   Upon information and belief, the defendant THE CITY OF NEWBURGH POLICE

DEPARTMENT knew that Kevin Brown had attempted to commit suicide at the Newburgh City

Jail on June 18, 2007.

66.   Upon information and belief, the defendant THE CITY OF NEWBURGH POLICE

DEPARTMENT made no written record of Kevin Brown's having attempted to commit suicide

74. Upon information and belief, on July 27, 2007 before being placed in the detention area, the defendant ERIC ELTZ completed the "Suicide Prevention Screening Guidelines" form concerning Kevin Brown, dated July 27, 2007, which included the following questions and affirmative answers:

Q   Arresting or transporting officer believes that detainee may be a suicide risk. If YES, notify Shift Commander.

A   Yes.

Q   Detainee has a history of drug or alcohol abuse.

A   Yes.

Q   Detainee shows signs of depression (e.g. crying, emotional flatness.)

A   Yes.

Q   Detainee appears overly anxious, afraid, or angry.

A   Yes.

Q    Detainee appears to feel unusually embarrassed or ashamed.

A   Yes.

Q    (A) Detainee is apparently under the influence of alcohol or drugs.

A   Yes.

Q    (B) If YES, is detainee coherent, or showing signs of withdrawal of mental illness? If YES, to both A and B, notify Shift Commander.

A   Yes.

75. Upon information and belief, on said "Suicide Prevention Screening Guidelines" concerning Kevin Brown, the defendant ERIK ELTZ checked off the box indicating that the Shift Commander was notified.

76. Upon information and belief, on said "Suicide Prevention Screening Guidelines"

concerning Kevin Brown, the defendant ERIK ELTZ checked off the box indicating that "Active" supervision was instituted, and he did not check off the "Routine" or "Constant" supervision boxes listed alternatively thereon.

77.   Upon information and belief, at all times mentioned herein, the Watch Commanders at the Newburgh City Jail were police officers employed by the defendants THE CITY OF NEWBURGH and the CITY OF NEWBURGH POLICE DEPARTMENT and owed a duty to inmates, including Kevin Brown, to ensure the appropriate supervision of inmates being held in its detention area.

78.   Upon information and belief, at all times mentioned herein, the Watch Commanders at the Newburgh City Jail owed a duty to Kevin Brown to ensure that all protocols, policies, guidelines, and directives, regarding mental health evaluation and treatment, and suicide risk identification and suicide prevention of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT, the defendant THE CITY OF NEWBURGH, and the New York State Office of Mental Health and New York State  Commission of Correction be followed by the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT personnel.

79.   Upon information and belief, at all times mentioned herein, the Watch Commanders at the Newburgh City Jail owed a duty to Kevin Brown to ensure that the New York State Office of Mental Health's ADM 330 Suicide Risk Assessment form was properly utilized by the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT personnel.

80.   Upon information and belief, defendants ERIK ELTZ, FRANK LABRADA, PAUL WEBER, DONALD CAMPBELL and WILLIAM ROSE did not complete the basic training component governing the use of the New York State Office of Mental Health's ADM 330 Suicide Risk Assessment form prior to July 27, 2007.

81.   Upon information and belief, the defendant FRANK LABRADA was the Watch Commander at the Newburgh City Jail from 2:00 p.m. on July 27, 2007 to 6:00 a.m. on July 28, 2007, which includes the time of said arrest of Kevin Brown by the defendant ERIK ELTZ.

82.   Upon information and belief, after the initial processing of Kevin Brown on July 27, 2007, and after the defendant ERIK ELTZ had completed the "Suicide Prevention Screening Guidelines" form, the defendant ERIK ELTZ told the defendant FRANK LABRADA that Kevin Brown was "crazy" or a "crazy man", and that he was in the holding cell area.

83.   Upon information and belief, at all times mentioned herein, the Desk Officers at the Newburgh City Jail owed a duty to Kevin Brown to supervise the inmates being held in its detention area.

84.   Upon information and belief, at all times mentioned herein, the Desk Officers at the Newburgh City Jail owed a duty to Kevin Brown to follow all protocols, policies, guidelines, and directives regarding mental health evaluation and treatment, and suicide risk identification and suicide prevention of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT, the defendant THE CITY OF NEWBURGH, and the New York State Office of Mental Health and New York State  Commission of Correction

85.   Upon information and belief, at all times mentioned herein, the Desk Officers at the Newburgh City Jail owed a duty to Kevin Brown to properly utilize the New York State Office of Mental Health's ADM 330 Suicide Risk Assessment form.

86.   Upon information and belief, the defendant PAUL WEBER was the Desk Officer at the Newburgh City from about 8:30 p.m. on July 27, 2007 to 8:00 a.m. on July 28, 2007, which includes the time of said arrest of Kevin Brown by the defendant ERIK ELTZ.

87.   Upon information and belief, at some time prior to July 27, 2007, the defendant

PAUL WEBER became familiar with Kevin Brown as a persistent drug abuser.

88.  Upon information and belief, after the processing of said arrest of Kevin Brown on July 27, 2007, the defendant ERIK ELTZ told the defendant PAUL WEBER that Kevin Brown is "crazy", and that he had made said July 27, 2007 arrest of Kevin Brown.

89.  Upon information and belief, after the processing of said arrest of Kevin Brown on July 27, 2007, the defendant ERIK ELTZ gave the defendant PAUL WEBER the arrest paperwork and prisoner card that the defendant PAUL WEBER used during his checks of said prisoner detention area during the night.

90.  Upon information and belief, the defendant ERIK ELTZ did not give the defendant PAUL WEBER or any other Desk Officer or any Watch Commander the "Suicide Prevention Screening Guidelines" form that the defendant ELTZ had completed with respect to Kevin Brown, either on July 27 or on July 28, 2007.

91.  Upon information and belief, no Desk Officer or Watch Commander asked the defendant ERIK ELTZ to give them the "Suicide Prevention Screening Guidelines" form that the defendant ELTZ had completed with respect to Kevin Brown, either on July 27 or on July 28, 2007.

92.  Upon information and belief, at about 10:45 p.m. on July 27, 2007, Kevin Brown was placed into cell #10 of the prisoner detention area at the Newburgh City Jail.

93.  Upon information and belief, every half hour from 11:00 p.m. on July 27, 2007 to 6:00 a.m. on July 28, 2007, supervisory rounds of said prisoner detention area at the Newburgh City Jail were conducted by police officers employed by the defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT, including the defendant PAUL WEBER.

94.  Upon information and belief, the defendant DONALD CAMPBELL assumed the Desk Officer duties at the Newburgh City Jail from about 7:30 a.m. on July 28, 2007.

95.  Upon information and belief, on July 28, 2007 the defendant DONALD CAMPBELL conducted supervisory rounds of said prisoner detention area at the Newburgh City Jail at about 30 minute intervals.

96.  Upon information and belief, on July 28, 2007 at 11:44 a.m. the defendant DONALD CAMPBELL conducted a supervisory round of said prisoner detention area at the Newburgh City Jail.

97.  Upon information and belief, on July 28, 2007 between 11:44 a.m. and 12:13 p.m., no personnel of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT or anyone else conducted any supervisory round of said prisoner detention area at the Newburgh City Jail, including cell #10.

98.  Upon information and belief, on July 28, 2007 at 11:49 a.m., Kevin Brown hanged himself in cell #10 at the Newburgh City Jail by tying his shirt around his neck and to the cell bars.

99.  Upon information and belief, at no time prior to that time had Kevin Brown been under constant supervision while in the Newburgh City Jail.

100.  Upon information and belief, on July 28, 2007 at 12:13 p.m., the defendant DONALD CAMPBELL discovered Kevin Brown hanging from the cell bars.

101.  Upon information and belief, after discovering Kevin Brown hanging from the cell bars, the defendant DONALD CAMPBELL was unable to free the shirt from around his neck by reaching through the cell bars, and left the area for assistance.

102.  Upon information and belief, the defendant WILLIAM ROSE was the Watch

Commander at the Newburgh City Jail at the time Kevin Brown hanged himself.

103. Upon information and belief, after discovering Kevin Brown hanging from the cell bars and being unable to free the shirt from around his neck, the defendant DONALD CAMPBELL entered the communications area at the Newburgh City Jail and told the defendant WILLIAM ROSE that he saw Kevin Brown hanging in his cell.

104. Upon information and belief, the defendant DONALD CAMPBELL then returned to cell #10 and opened that cell door.

105. Upon information and belief, the defendant WILLIAM ROSE then went into cell #10 and cut the shirt away from Kevin Brown's neck with a folding knife and lowered him to the floor.

106. Upon information and belief, the defendant DONALD CAMPBELL then checked Kevin Brown for a pulse, but found none.

107. Upon information and belief, the defendant WILLIAM ROSE then checked Kevin Brown for a pulse, but found none.

108. Upon information and belief, after Kevin Brown hanged himself on July 28, 2007, no personnel of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT, including the defendants DONALD CAMPBELL and WILLIAM ROSE, performed any first aid procedure on Kevin Brown, other than checking for a pulse.

109. Upon information and belief, after Kevin Brown hanged himself on July 28, 2007, no personnel of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT, including the defendants DONALD CAMPBELL and WILLIAM ROSE, initiated any cardiopulmonary resuscitation (hereinafter "CPR"), or other resuscitation procedure, including automated external defibrillation (hereinafter "AED"), on Kevin Brown.

2. Constant Supervision: Uninterrupted personal visual observation of prisoners by personnel responsible for the care and custody of such prisoners.

D. Arresting Officer Procedure:

The Arresting Officer shall be responsible for:

2. Screening all prisoners <u>prior to initial cell assignment</u> [emphasis in original]. The screening process shall include, but is not limited to:

    b. The arresting officer will administer the Suicide Prevention Screening Guidelines, form #330 ADM;

    c. The arresting officer will review existing files (criminal history jacket) to determine if the prisoner has attempted suicide or received psychiatric inpatient services during prior incarceration in that lockup.

3. The arresting officer will immediately notify the Watch Commander whenever a prisoner:

    a. Scores in the high risk (score of 8 in column A) or immediate referral categories on the Suicide Prevention Screening Form

4. The arresting officer will assign appropriate housing based upon the results of completed Form #330 ADM and/or classification determination.

7. The Arresting Officer and/or Desk Officer will notify the Watch Commander whenever a prisoner appears to be suicidal or in need of other emergency care. All such notifications shall be verbal, followed by appropriate prisoner card entries.

8. The officer(s) assigned to provide constant or active supervision for prisoners with metal health problems shall perform the following duties:

    a. Review appropriate prisoner cards and records.

    b. Discuss the prisoner's status with the officer whom he is relieving.

    h. Perform the required supervisory checks as prescribed by the Chief of Police or Watch Commander.

E. Watch Commander:

The Watch Commander shall be responsible for:

1. Assuring that all new prisoners are screened prior to cell assignments and

preferably as soon as they are brought to headquarters.

3.    Assuring that constant supervision is immediately provided for the following types
      of prisoners:

      a.    Suicidal prisoners

113.    Upon information and belief, Subtitle AA State Commission of Correction, Chapter

IV (Minimum Standards and Regulations for Management of City Jails - Town and Village), Part

7504.1 (Supervision of Detention Areas), 9 NYCRR §7504.1, was in effect on July 27, 2007 and

July 28, 2007, and provides in pertinent part as follows:

      (b)    In situations where a prisoner's physical or mental condition obviously warrants it,
             constant observation and supervision shall be provided.

114.    Upon information and belief, a video recording taken and preserved by members of

the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT establishes that

defendants, and each of them, failed to maintain constant supervision of Kevin Brown at any

time after he was placed in a cell following his arrest, and  for at least twenty-nine (29) minutes

prior to the time that the defendant DONALD CAMPBELL discovered Kevin Brown hanging

inside his cell from the cell bars by his tee shirt.

115.    Upon information and belief, Kevin Brown's mental and physical condition on July

27 and July 28, 2007 required defendants, and each of them, to maintain Kevin Brown under

constant supervision as this term is defined by the New York State Commission of Correction

Chairman's Memorandum No. 17-99, dated November 1, 1999, and the defendant THE

NEWBURGH CITY OF NEWBURGH POLICE DEPARTMENT General Order No. 0-020.

116.    Upon information and belief, following the issuance of the New York State

Commission of Correction Chairman's Memorandum No. 17-99, dated November 1, 1999, the

defendants, and each of them, knew or should have known that individuals like Kevin Brown

represent a known or obvious risk of suicide and can hang themselves with fatal results in less than five (5) minutes, and that constant observation and supervision was required to deter injury or death to such individuals.

117.   Upon information and belief, in 2007 and prior thereto the defendant THE CITY OF NEWBURGH was the final policy making authority with respect to supervision of and provision of services to prisoners at the Newburgh City Jail.

118.   Upon information and belief, in 2007 and prior thereto, the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT was the final policy making authority with respect to supervision of and provision of services to prisoners at the Newburgh City Jail.

119.   Upon information and belief, in 2007 and prior thereto, the defendant Police Chief ERIC PAOLILLI was the final policy making authority with respect to supervision of and provision of services to prisoners at the Newburgh City Jail.

120.   Upon information and belief, in 2007 and prior thereto, the authority for carrying out the policies and procedures of the Suicide Prevention Program at the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT rested with the defendant THE CITY OF NEWBURGH.

121.   Upon information and belief, in 2007 and prior thereto, the authority for carrying out the policies and procedures of the Suicide Prevention Program at the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT rested with the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT.

122.   Upon information and belief, in 2007 and prior thereto, the authority for the policies carrying out the policies and procedures of the Suicide Prevention Program at the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT rested with the defendant Police Chief ERIC

PAOLILLI.

**AS AND FOR A FIRST CLAIM FOR RELIEF ON BEHALF OF THE NEXT OF KIN OF KEVIN BROWN AGAINST THE DEFENDANTS THE CITY OF NEWBURGH AND THE CITY OF NEWBURGH POLICE DEPARTMENT**

123.  On July 28, 2007, while Kevin Brown was in the jail cell at the Newburgh City Jail, he was caused to sustain severe and serious personal injuries to his mind and body resulting in his death.

124.  The negligent, wanton, reckless, and careless acts of the defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT, their agents, servants and/or employees were a cause of the resultant injuries and death of Kevin Brown.

125.  The defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT, their agents, servants, and/or employees were negligent, wanton, reckless, careless, and/or deliberately indifferent, in among other things, failing to place Kevin Brown under constant observation and supervision while confined at the Newburgh City Jail on July 27, 2007 and July 28, 2007; failing to provide adequate and proper supervision of the activities of Kevin Brown while he was in the custody and control of the defendants; failing to adequately take into account the physical and mental state of Kevin Brown; failing to take ordinary and customary actions to prevent Kevin Brown from committing suicide; negligently, wantonly, recklessly and carelessly supervising, treating, and protecting the health, safety, and life of Kevin Brown; negligently assessing, evaluating, treating, caring for, supervising, monitoring, controlling, and holding Kevin Brown in custody; assessing, evaluating, treating, caring for, supervising, monitoring, controlling, and holding Kevin Brown in custody with deliberate indifference to his serious medical and psychological needs; failing to take reasonable measures to abate the known risk of substantial injury or death to Kevin Brown; wantonly and

failing to adequately review Kevin Brown's prisoner card and records; failing to comply with the

defendant THE NEWBURGH CITY OF NEWBURGH POLICE DEPARTMENT General Order

No. 0-020 by not instituting constant supervision for high risk detainees, such as Kevin Brown;

failing to comply with the defendant THE NEWBURGH CITY OF NEWBURGH POLICE

DEPARTMENT General Order No. 0-020 by improperly notifying the Watch Commander;

failing to adequately review all suicide screenings, such as Kevin Brown's suicide screening;

failing to adequately approve supervision level assignments, such as Kevin Brown's supervision

level assignment; failing to have the Watch Commanders sign off on all completed suicide

screenings; failing to adequately review existing files to determine if a detainee, such as Kevin

Brown, had attempted suicide or received psychiatric inpatient services during prior incarceration

at the Newburgh City Jail; failing to employ proper and adequate suicide screening/supervision

mechanisms; failing to screen for dismissal and/or re-training those police officers whose readily

observable conduct demonstrated an abnormal likelihood that they would violate the

constitutional rights of citizens; failing to reasonably address the aforesaid deficiencies in the

suicide screening/supervision mechanisms utilized by the defendants, which defendants knew or

should have known of; failing to ensure that all protocols, policies, guidelines, and directives,

regarding mental health evaluation and treatment, and suicide risk identification and suicide

prevention of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT, the

defendant THE CITY OF NEWBURGH, and the New York State Commission of Correction be

followed by the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT personnel;

failing to provide proper medical and psychological assessment, evaluation, and treatment of

Kevin Brown; failing to administer proper first aid procedures upon Kevin Brown after he

hanged himself on July 28, 2007 at the Newburgh City Jail; failing to initiate any CPR or other

resuscitation procedures, such as AED, upon Kevin Brown after he hanged himself on July 28,

2007 at the Newburgh City Jail; being deliberately indifferent to the serious medical and

psychological needs of Kevin Brown; failing to make and maintain proper medical,

psychological, and other records concerning persons, including Kevin Brown, who were detained

or incarcerated in said jail, including, but not limited to, easily accessible records indicating

whether or not a detainee had previously attempted to commit suicide in jail or had been

previously designated as a suicide risk in jail; failing to adequately supervise and oversee the

defendants' personnel, employees, and agents; failing to hire necessary, competent, adequate, and

well-trained personnel; hiring inept, unskilled, inexperienced, and incompetent personnel;

negligently training personnel once hired; failing to adequately instruct the defendants'

personnel, employees, and agents as to the proper methods to use to evaluate, assess, treat,

supervise, and control detainees such as Kevin Brown; failing to adequately train the defendants'

personnel, employees, and agents in the statewide Suicide Prevention and Crisis Intervention

Program; failing to adequately train the defendants' personnel, employees, and agents in the

proper utilization of the New York State Office of Mental Health's ADM 330 Suicide Risk

Assessment form; failing to complete the basic training component that governs the use of the

New York State Office of Mental Health's ADM 330 Suicide Risk Assessment form; failing to

implement the Suicide Prevention and Crisis Intervention Program as developed and

promulgated by the New York State Commission of Correction and the New York State Office

of Mental Health; failing to provide adequate training in the Local Forensic Crisis Service

Model-Suicide Prevention Program; failing to facilitate updated first aid, CPR, and AED training

for the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT police officers; failing

to adequately train the Watch Commanders in the review of all completed suicide screenings and

approval of supervision level assignments; failing to take disciplinary action against or penalize

any personnel of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT in

connection with the suicide death of Luke Ward; failing to adequately conduct an investigation

into the death of Luke Ward; failing to follow the policies and procedures of the defendant THE

CITY OF NEWBURGH POLICE DEPARTMENT as they related to the suicide death of Luke

Ward and the prevention of suicides by inmates of the Newburgh City Jail; failing to follow the

policies, directives, and recommendations of the New York State Commission of Correction

Chairman's Memorandum No. 17-99, dated November 1, 1999; failing to follow the New York

State Correction Law; violating the federal constitutional rights of Kevin Brown, including, but

not limited to, the rights secured to him by the Eighth and Fourteenth Amendments; violating 42

USC § 1983 in that the defendants, their agents, servants, and/or employees disregarded a

substantial risk of serious harm to the health and safety of Kevin Brown with deliberate

indifference; violating 9 NYCRR § 7504.1(b); violating the defendant THE NEWBURGH CITY

OF NEWBURGH POLICE DEPARTMENT General Order No. 0-020, including but not limited

to Section XI-D-4 and Section XI-D-3-a; and the defendants THE CITY OF NEWBURGH and

THE CITY OF NEWBURGH POLICE DEPARTMENT, their agents, servants, and/or

employees were in other ways, negligent, wanton, reckless, careless, and deliberately indifferent.

126.  The defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH

POLICE DEPARTMENT, their agents, servants, and/or employees had actual and/or

constructive notice of the dangerous and/or defective conditions in that the conditions existed for

a sufficient length of time prior to the happening of the incident and in the exercise of reasonable

care, the defendants could have and should have had knowledge and notice thereof and further,

the defendants, their agents, servants and/or employees created said conditions.

127. The defendants THE CITY OF NEWBURGH and THE CITY OF NEWBURGH POLICE DEPARTMENT, their agents, servants, and/or employees had actual and/or constructive notice of the unusually serious risk of self-inflicted injury or death facing Kevin Brown, and failed to take obvious steps to address that known, serious risk.

128. On or about December 3, 2007, and within ninety (90) days after the appointment of the Administratrix of Kevin Brown's Estate, the plaintiff served an Amended Notice of Claim upon the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT in full compliance with the provisions of the General Municipal Law § 50-e of the Laws of the State of New York.

129. On or about December 3, 2007, and within ninety (90) days after the appointment of the Administratrix of Kevin Brown's Estate, the plaintiff served an Amended Notice of Claim upon the defendant THE CITY OF NEWBURGH in full compliance with the provisions of the General Municipal Law § 50-e of the Laws of the State of New York.

130. The one-year-and-ninety-day requirement with respect to the service of the pleadings has been complied with. A General Municipal Law § 50-h hearing was held on December 6, 2007.

131. At least thirty (30) days has elapsed since the service of the Amended Notice of Claim and the defendants have neglected or refused to make an adjustment or payment thereof.

132. The limited liability provisions of CPLR § 1601 do not apply pursuant to one or more of the exceptions of CPLR §1602.

133. The Next of Kin of Kevin Brown claim damages for the physical injuries, harm, conscious pain and suffering, and severe emotional distress undergone by Kevin Brown prior to his death, the loss of decedent's earning capacity from the time of his death until such time in the future that he probably would have lived had he not died as a result of the aforementioned

negligence, and all expenses incurred by the Next of Kin of Kevin Brown by reason of the negligence.

134. The Next of Kin of Kevin Brown claim damages for all ambulance, transportation, hospital, medical, funeral, burial, and administrative expenses, pecuniary losses to distributees and next of kin, and other expenses necessitated by reason of his aforementioned injuries and death.

135. As a result of the foregoing, the Next of Kin of Kevin Brown sustained damages in an amount that exceeds the jurisdictional limits of all lower courts which may have jurisdiction of this matter.

### AS AND FOR A SECOND CLAIM FOR RELIEF ON BEHALF OF THE PLAINTIFF ARLINE BROWN, AS THE ADMINISTRATRIX FOR THE ESTATE OF KEVIN BROWN, AGAINST THE DEFENDANTS THE CITY OF NEWBURGH AND THE CITY OF NEWBURGH POLICE DEPARTMENT

136. The plaintiff ARLINE BROWN realleges, reiterates, and incorporates by reference each and every allegation in paragraphs 1 through 134 of this complaint as if fully set forth herein.

137. The plaintiff ARLINE BROWN brings this action to recover for the wrongful death of Kevin Brown. No action for any wrongful act leading to the death of Kevin Brown was brought during his lifetime.

138. At the time of the aforesaid incident, Kevin Brown sustained multiple injuries in, to, and about his body.

139. From the time of the aforesaid incident and for a period of time thereafter, Kevin Brown lived and was in excruciating pain, agony, and physical, mental, and emotional distress..

140. As Administratrix of the Estate of Kevin Brown, the plaintiff ARLINE BROWN

claims damages for the physical injuries, harm, conscious pain and suffering, and severe

emotional distress undergone by Kevin Brown prior to his death, the loss of decedent's earning

capacity from the time of his death until such time in the future that he probably would have

lived had he not died as a result of the aforementioned negligence, and all expenses incurred by

the Estate by reason of the negligence.

141. As the Administratrix of the Estate of Kevin Brown, the plaintiff ARLINE BROWN

claims damages for all ambulance, transportation, hospital, medical, funeral, burial, and

administrative expenses, pecuniary losses to distributees and next of kin, and other expenses

necessitated by reason of his aforementioned injuries and death.

142. As a result of the foregoing, the plaintiff ARLINE BROWN, as Administratrix of

the Estate of Kevin Brown, has sustained damages in an amount that exceeds the jurisdictional

limits of all lower courts which may have jurisdiction of this matter.

**AS AND FOR A THIRD CLAIM FOR RELIEF ON BEHALF OF THE NEXT OF KIN OF KEVIN BROWN, PURSUANT TO 42 USC § 1983, AGAINST THE DEFENDANTS THE CITY OF NEWBURGH, THE CITY OF NEWBURGH POLICE DEPARTMENT, ERIC PAOLILLI, ERIK ELTZ, FRANK LABRADA, DONALD CAMPBELL, WILLIAM ROSE, AND PAUL WEBER**

143. The plaintiff ARLINE BROWN realleges, reiterates, and incorporates by reference

each and every allegation in paragraphs 1 through 134 and paragraphs 137 through 141 of her

complaint as if fully set forth herein.

144. Upon information and belief, the defendants THE CITY OF NEWBURGH, THE

CITY OF NEWBURGH POLICE DEPARTMENT, ERIC PAOLILLI, ERIK ELTZ, FRANK

LABRADA, DONALD CAMPBELL, WILLIAM ROSE, and PAUL WEBER (hereinafter

"defendants"), and each of them, acting under color of state law and in both their individual and

official capacities, subjected Kevin Brown, or caused him to be subjected, to the deprivation of

rights to be free from deliberate indifference, gross negligence, and cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution and laws of the United States.

145. Upon information and belief, the defendants, and each of them, acting under color of state law and in both their individual and official capacities, subjected Kevin Brown, or caused him to be subjected, to the deprivation of rights to be free from deliberate indifference, gross negligence, and cruel and unusual punishment as a matter of substantive due process as guaranteed by the Fourteenth Amendment of the United States Constitution and laws of the United States.

146. Upon information and belief, the defendants, and each of them, acting in both their individual and official capacities, violated 42 USC § 1983 in that they disregarded with deliberate indifference the unusually serious risk of self-inflicted injury or death facing Kevin Brown.

147. Upon information and belief, the defendants, and each of them, acting under color of state law and in both their individual and official capacities, had actual knowledge of the unusually serious risk of self-inflicted injury or death facing Kevin Brown.

148. Upon information and belief, the defendants, and each of them, acting under color of state law and in both their individual and official capacities, were deliberately indifferent to the known, unusually serious risk of self-inflicted injury or death facing Kevin Brown.

149. Upon information and belief, the defendants, and each of them, acting under color of state law and in both their individual and official capacities, failed to take reasonable measures to abate the known, unusually serious risk of self-inflicted injury or death facing Kevin Brown.

failing to adequately conduct an investigation into the circumstances of Kevin Brown's attempted suicide at the Newburgh City Jail on June 18, 2007; failing to follow the policies and procedures of the defendant THE CITY OF NEWBURGH POLICE DEPARTMENT as they related to Kevin Brown's attempted suicide at the Newburgh City Jail on June 18, 2007; failing to make any record of Kevin Brown's attempted suicide at the Newburgh City Jail on June 18, 2007; failing to properly utilize the New York State Office of Mental Health's ADM 330 Suicide Risk Assessment form in connection with Kevin Brown's detention at the Newburgh City Jail; failing to properly complete the New York State Office of Mental Health's ADM 330 Suicide Risk Assessment form in connection with Kevin Brown's detention at the Newburgh City Jail on July 27, 2007; failing to properly notify the Watch Commander when Kevin Brown scored as a high suicide risk on the New York State Office of Mental Health's ADM 330 Suicide Risk Assessment form; failing to make the screening results of the New York State Office of Mental Health's ADM 330 Suicide Risk Assessment form readily available to staff who were responsible for supervising the detainees; failing to assign Kevin Brown appropriate housing based upon the results of the completed New York State Office of Mental Health's ADM 330 Suicide Risk Assessment form; failing to provide adequate facilities so as to prevent the suicide of the deceased plaintiff; failing to make appropriate entries on Kevin Brown's prisoner card; failing to adequately review Kevin Brown's prisoner card and records; failing to comply with the defendant THE NEWBURGH CITY OF NEWBURGH POLICE DEPARTMENT General Order No. 0-020 by not instituting constant supervision for high risk detainees, such as Kevin Brown; failing to comply with the defendant THE NEWBURGH CITY OF NEWBURGH POLICE DEPARTMENT General Order No. 0-020 by improperly notifying the Watch Commander; failing to adequately review all suicide screenings, such as Kevin Brown's suicide screening;

punishment as guaranteed by the Eighth Amendment of the United States Constitution and the laws of the United States.

157. Upon information and belief, by reason of these systematic policies, practices, customs, and procedures, the defendants, and each of them, have violated the rights of Kevin Brown to be free from deliberate indifference, gross negligence, and cruel and unusual punishment as a matter of substantive due process as guaranteed by the Fourteenth Amendment of the United States Constitution and the laws of the United States.

158. Upon information and belief, all of the foregoing failures, conditions, and circumstances listed in the preceding paragraphs hereof manifested an intentional and/or deliberate indifference to the health, safety, and welfare of Kevin Brown in violation of his rights against cruel and unusual punishment as a matter of law under the Eighth Amendment of the United States Constitution and laws of the United States.

159. Upon information and belief, all of the foregoing failures, conditions, and circumstances listed in the preceding paragraphs hereof manifested an intentional and/or deliberate indifference to the health, safety, and welfare of Kevin Brown in violation of his rights against cruel and unusual punishment as a matter of substantive due process under the Fourteenth Amendment of the United States Constitution and the laws of the United States.

160. The defendants' deliberate indifference to the foregoing failures, conditions, and circumstances set forth above was a direct and proximate cause of Kevin Brown's suicide.

161. By reason of the defendants' foregoing negligent, wanton, reckless, and/or careless acts and omissions and deliberate indifference thereof, Kevin Brown was caused and enabled to commit suicide at the Newburgh City Jail.

162. The plaintiff ARLINE BROWN, as Administratrix for the Estate of Kevin Brown,

c/o City of Newburgh Police Department
55 Broadway
Newburgh, New York 12550

ERIK ELTZ, Individually and in his Official Capacity
as a Police Officer employed in the City of Newburgh
Police Department by the City of Newburgh
Defendant In Person
c/o City of Newburgh Police Department
55 Broadway
Newburgh, New York 12550

FRANK LABRADA, Individually and in his Official
Capacity as a Police Officer employed in the City of
Newburgh Police Department by the City of Newburgh
Defendant In Person
c/o City of Newburgh Police Department
55 Broadway
Newburgh, New York 12550

DONALD CAMPBELL, Individually and in his Official
Capacity as a Police Officer employed in the City of
Newburgh Police Department by the City of Newburgh
Defendant In Person
c/o City of Newburgh Police Department
55 Broadway
Newburgh, New York 12550

WILLIAM ROSE, Individually and in his Official
Capacity as a Police Officer employed in the City of
Newburgh Police Department by the City of Newburgh
Defendant In Person
c/o City of Newburgh Police Department
55 Broadway
Newburgh, New York 12550

PAUL WEBER, Individually and in his Official
Capacity as a Police Officer employed in the City
of Newburgh Police Department by the City of Newburgh
Defendant In Person
c/o City of Newburgh Police Department
55 Broadway
Newburgh, New York 12550